IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANN YVETTE SCHOLTZ,                    No    C 07-1054 VRW

    Plaintiff,                       ORDER

    v

MICHAEL J ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

        Plaintiff Ann Yvette Scholtz ("plaintiff") has appealed the final decision of the Social Security Administration (SSA) to deny her application for supplemental security income (SSI) benefits.

        In her motion for summary judgment (Doc # 12), plaintiff argues five issues: (1) the Administrative Law Judge (ALJ) determined that plaintiff was not disabled using "Grid Rule" 202.14 (20 CFR Part 404, Subpart P, App 2), which applies to individuals aged "50 to 54", categorized as "closely approaching advanced age," but plaintiff turned fifty-five three weeks before the ALJ's

decision, which placed her under the "advanced age" part of the Grid Rules for the time period after she turned fifty-five; (2) the ALJ posed an incomplete hypothetical to the vocational expert that did not encompass all of plaintiff's functional limitations; (3) the ALJ did not consider the lay evidence from plaintiff's long-term friend in assessing plaintiff's disability; (4) the ALJ improperly rejected the opinion of treating psychiatrist Dr Beverly Cox; and (5) the ALJ improperly discounted plaintiff's credibility.

In his cross-motion, defendant Michael J Astrue, Social Security Commissioner, has moved for a voluntary remand to the Appeals Council for further administrative proceedings, effectively conceding the merit of the first three of the above-referenced issues. Defendant's brief, however, states that the parties "could not agree to the terms of a remand, necessitating [a] motion" and proposes specific remand language. Doc # 17 at 2-3.

Plaintiff has not filed a reply, so the basis for the parties' disagreement is not well-developed in the briefs. The court presumes that plaintiff agrees to defendant's proposed remand language as to the first three issues but requests adjudication of the last two. Accordingly, the court will review only the ALJ's handling of Dr Cox's opinion and of plaintiff's subjective complaints. This matter is remanded subject to the further provisions of this order.

**I**

**A**

Plaintiff was born on April 23, 1951. Administrative Record, Doc #9 (AR) at 21. She is a high school graduate and also

2

completed a certified nursing assistant program in 1990.  AR 68, 234, 394.  At the time of the hearing before the ALJ, plaintiff had two daughters in their mid-thirties (AR 234-35), the younger of whom was developmentally disabled and schizophrenic.  AR 404.

Plaintiff's recent work history consisted of approximately twelve years as a part-time home help aide with In-Home Supportive Services of San Mateo County assisting individuals in need of home care.  AR 64, 73.

On a SSA questionnaire, plaintiff claimed to have become unable to work on May 5, 1998 because of "hepatitis C, arthritis, thyroid problems, bad memory, [and] back problems."  AR 63-64.  Plaintiff claimed that she then worked two hours per day, two days a week "in 2001" until she stopped working entirely on October 10, 2003.  Id.  That report asked: "[w]hy did you stop working?"  Plaintiff responded: "I was taking care of a person and she wanted me to do other things, like cleaning windows, things I was not supposed to do.  She put a lot of pressure on me that all I wanted to do was go home and drink.  What she wanted me to do was not part of the program I worked for."  AR 64.

In 2000, plaintiff fell and fractured her left knee, causing a dislocated bone fragment.  AR 351, 414-16.  A plan to have this surgically removed was interrupted by a 2005 incarceration and not resumed.  AR 351, 352, 416-17.

According to plaintiff, she began having severe panic attacks around 2000 which later developed into agoraphobia (anxiety disorder).  AR 294, 398-99.

On October 16, 2003, plaintiff was treated for pain in her lower back, right hip, and right shoulder after a fall from a

3

bicycle. AR 194. Emergency Room (ER) physician assistant Cama Garcia noted that plaintiff had visited the hospital "numerous [times] in the past for pain syndrome disorders and narcotic seeking behavior." Id.

On October 28, 2003, plaintiff was treated for an injured left hand sustained by "punch[ing] a neighbor who was drunk." AR 184. ER physician Elliot Snyder, MD, splinted plaintiff's finger and gave her Naprosyn and Soma. Id.

The record also includes plaintiff's mental health records from San Mateo Mental Health Services. AR 204-33. A November 5, 2003 admission statement noted plaintiff's complaints for depression, chronic anxiety, agoraphobia, chronic insomnia, and documented a significant history of drug abuse. AR 225-32.

On November 13, 2003, plaintiff was treated for pain in her lower back and right leg sustained when moving furniture. AR 149. A medical note commented that plaintiff had not gone to physical therapy despite being referred in the past. Id.

Plaintiff visited primary care physician Charles Fracchia, MD for check-ups regarding her hypothyroidism, hepatitis C, anxiety, and depression. AR 147. On December 22, 2003, Dr Fracchia increased plaintiff's daily dosage of Levothroid and explained that her drinking and smoking habits "will hasten the course of hepatitis C." Id.

On December 12, 2003, treating psychiatrist Lynni Hayes-Tucker, MD, completed a three-page "initial note" diagnosing plaintiff with major depression in remission, opiate dependence in remission and current alcohol dependence and giving her a Global Assessment of Functioning (GAF) score of thirty-five. AR 222-24.

4

On February 6, 2004, Dr Hayes-Tucker refused plaintiff's request to complete a General Assistance referral form, noting in plaintiff's chart: "Explained to client that I did not feel she was disabled & therefore not eligible for [General Assistance]. It took several rounds of explanation for the client to understand this." AR 216. The progress entries for the mental health clinic ended on February 13, and an April 30 entry stated: "No contact by [plaintiff]. Close chart." AR 213.

On March 17, 2004, plaintiff was treated for back pain that allegedly had persisted for two days. AR 175. Dr Elliot Snyder diagnosed plaintiff with a strained lumbar. AR 179.

On April 23, 2004, plaintiff was treated for injuries to her hands and knees sustained by slipping and falling. AR 163. ER physician Robert Spencer, MD, splinted plaintiff's wrist and described her general appearance as "pleasant". AR 162-64.

On June 9, 2004, Dr Fracchia recorded that plaintiff had been sober for six months and was taking Paxil daily for her anxiety and depression. AR 140.

On March 31, 2005, Dominic Ho, MD, completed a General Assistance form for plaintiff. AR 361. Dr Ho diagnosed plaintiff with "low back pain" and concluded that she lacked the capacity to lift more than ten pounds, had partial capacity to sit or stand continuously, had no capacity to squat or kneel and was therefore unable to work for fifteen months, until May 30, 2006. AR 361-62. Notably, the record contains few records from Dr Ho (AR 275-77, 360-63), although he is referred to as plaintiff's "treating physician" "for over 10 years" (AR 417, 420) and once as her "Xanax source." AR 315.

5

In May 2005, plaintiff was convicted of petty theft and spent six months in jail. AR 297, 409. Plaintiff lost her home during this time and upon release began living in homeless shelters and transitional housing. AR 288.

In November 2005, upon her release from jail, the jail referred plaintiff back to San Mateo Mental Health. AR 297-302. Therapist Ann-Marie Murphy diagnosed plaintiff with "panic disorder with agoraphobia", "depressive disorder NOS" and alcohol dependency in remission and assigned her a GAF score of fifty-seven. Id.

On December 19, 2005, a resident in psychiatry at San Mateo Mental Health, Beverly Cox, MD, became plaintiff's treating psychiatrist. After an initial assessment, Dr Cox documented plaintiff's GAF at thirty with major depression "r/o double depression" with "anxious features". AR 291-94. In December 2005 and January 2006, Dr Cox provided plaintiff with handwritten notes addressed "to whom it may concern" on Health Department stationery, recommending that plaintiff "be allowed to remain in the shelter during daytime hours whenever possible due to a mental health condition" or "an anxiety disorder." AR 278-79. The record of progress notes by Dr Cox ends in February 2006. AR 280-96.

On January 6, 2006, plaintiff arrived at San Mateo Medical Center's Psychiatric Emergency Services office after drinking heavily for five days. AR 314-15, 334-42. Upon arriving there, plaintiff took approximately twenty Xanax tablets. AR 341. Plaintiff told Salma Khan, MD, that she swallowed the Xanax tablets because she wanted to become intoxicated and she feared the ER doctors would confiscate them from her. AR 334. Plaintiff

\\

6

1 repeatedly denied suicidal intentions, but the discharge notes
2 called it "unclear whether this was [a] suicide attempt." AR 321.
3       On January 9, plaintiff returned on her own to the
4 Psychiatric Emergency Services office. AR 306-09. Plaintiff
5 requested a refill of Seroquel although she had taken 900 mg the
6 day before. Notes from the visit included the following comments:
7 "She's looking for more Seroquel" and "wants a place to stay." AR
8 306-07. Registered nurse V Martin refused to refill the Seroquel
9 and informed plaintiff that "she is putting her housing in jeopardy
10 because of abuse of her meds." Id.
11       After the overdose, Safe Harbor Shelter was unwilling to
12 have plaintiff return. AR 288. Plaintiff was then admitted to
13 Hope House, a housing program for people with drug and alcohol
14 addictions. AR 287-88, 407.
15       On February 14, 2006, Dr Ho examined plaintiff and
16 completed a physical residual functional capacity (RFC) assessment
17 stating that plaintiff's symptoms would frequently interfere with
18 her attention and concentration, that she would not be able stand
19 or sit for more than two hours at a time and that she would not be
20 able to lift more than ten pounds. AR 275-77. Dr Ho also noted
21 that plaintiff first saw him "in 1990." Id.
22       On March 13, 2006, Dr Cox wrote a third letter stating
23 that plaintiff "is presently unable to meet the requirements of
24 full-time employment due to restrictions posed by a mental illness,
25 nor will she be able to work in any consistent way in the
26 foreseeable future." AR 364.
27 \\
28 \\

**B**

On June 28, 2004, plaintiff filed an application for SSI, alleging disability beginning May 5, 1998.  AR 15.  She listed "hepatitis C, arthritis, thyroid problems, bad memory, [and] back problems" as grounds for her disability claim.  AR 63.  On August 10, 2004, Andria Tullon, plaintiff's friend of nineteen years, submitted an Adult Third Party report describing plaintiff's daily activities as "limited," stating that "this illness has taken over her life, affecting her family and close friends."  AR 100-07.

On September 15, 2004, Jonathan Gonick-Hallows, PhD, conducted a consultative psychological evaluation and determined that plaintiff had an IQ of 104 and a GAF score of sixty-eight.  AR 236.  He noted that plaintiff's impulsive responses led to mistakes on easy items, and surmised that "her ultimate potential may be somewhat higher than current test results would indicate."  Id.  Dr Gonick-Hallows's "impression" was that "[s]he [was] pleasant and cooperative throughout, and could be expected to get along well with others in cooperative interpersonal situations."  AR 237.

On September 24, 2004, physician Elliot Liff, MD, conducted a physical evaluation, concluding that plaintiff "should be able to stand and/or walk for six hours during an eight-hour workday.  There is no restriction in stooping, crouching, kneeling or squatting. * * * She could lift and carry frequently 15 pounds and occasionally 25 pounds."  AR 240.

On November 2, 2004, psychiatric consultant Robert Lee, MD, conducted a mental RFC assessment which determined plaintiff was "moderately limited" in her ability to complete daily living activities, maintain concentration, persistence or pace, or

8

maintain socially appropriate behavior with the general public, her supervisors, coworkers or peers. AR 243-60. Dr Lee also noted potentially drug-induced "double depression" under affective disorders and wrote "active abuse?" under "substance addiction disorders". AR 246, 251.

On November 3, 2004, physician consultant Shashi Mathur, MD, conducted a physical RFC assessment which determined plaintiff would be able to lift and/or carry twenty-five pounds occasionally and fifteen pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for six hours in an eight hour workday; and push and/or pull without limitation. AR 261-62.

On November 9, 2004, the SSA denied plaintiff's claim (AR 30), basing its decision on the conclusions of Drs Lee and Mathur that plaintiff was "not disabled." AR 28. The denial recognized that plaintiff "may not be able to perform [her] past work," but that she could "do other less mentally demanding work with limited contact with others." AR 31.

Plaintiff then requested reconsideration, claiming that "the combination of my physical and emotional problems make it impossible for me to work." AR 35. A second psychiatric consultant, Pearl Peskin, MD, and physician consultant, John Chokatos, MD, reaffirmed the conclusions of the previous mental and physical RFCs and independently concluded plaintiff was "not disabled." AR 28, 257, 261. Based on this reconsideration, the SSA again denied plaintiff's claim on February 14, 2005. AR 37-42.

Plaintiff requested a hearing before an ALJ (AR 43), which took place on March 2, 2006. AR 15. Plaintiff testified about her physical and mental impairments, specifically detailing

9

her fear of being outside her home: "I'm afraid. I'm terrified." AR 395, 406-08. In response to the ALJ's question about why she stopped working in 2003, plaintiff explained that she had to care for her "developmentally delayed" daughter. AR 404. Plaintiff's attorney subsequently asked plaintiff to clarify whether something prevented plaintiff from working after 2003, to which plaintiff cited her "knee and just a fear of going out there." AR 410. Plaintiff also testified that she would only be able to sit or stand continuously for two and a half hours. AR 419.

      Medical expert Sergio Bello, MD, testified that none of plaintiff's impairments constituted a "listing level condition." AR 415-17. He testified that while plaintiff did have impairments related to the unrepaired bone fragment in her knee, she would still be able to perform jobs in the light work category. AR 417.

      Vocational expert "Mr Beeman" testified that an individual with plaintiff's profile (including capable of light work but moderately impaired for social functioning and mildly impaired for concentration, persistence and pace but capable of simple, repetitive tasks) would not be capable of performing plaintiff's past relevant work as a home health aide or nurse's assistant due to the limitations on social interaction but would be able to work in "numerous" categories of light unskilled work, such as records clerk, assembler or machine operator. AR 428-30. With a significant limitation on her ability to perform simple, repetitive tasks, Beeman testified, plaintiff would not be employable. AR 431.

      On May 16, 2006, the ALJ issued a decision finding that plaintiff did not have an impairment or combination of impairments

10

that met or medically equaled a listed impairment in the SSA regulations. AR 17. In reaching this result, the ALJ discounted plaintiff's credibility: "The objective findings in the medical evidence do not fully support the claimant's complaints." AR 19. Noting that plaintiff's physical and mental impairments "could be reasonably expected to produce the alleged symptoms," the ALJ nevertheless found plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms [] not entirely credible." Id. He described plaintiff's credibility thusly:

> The undersigned concludes that based on the objective medical findings, subjective allegations, and medical opinions, the claimant's allegations regarding her physical and mental limitations are not generally credible. The record supports that her testimony is not consistent with the objective findings. The claimant has been noncompliant with, and is abuse of, the medications prescribed for treatment of her mental impairments. The treatment prescribed for claimant's physical complaints has been conservative and non-aggressive. The undersigned notes that [the] claimant was able to attend to the hearing proceedings closely and fully without any visible distractions or overt pain behavior and was able to respond to questions in an appropriate manner. The undersigned further notes that the claimant testified she quit her last job to take care of her daughter, not for medical reasons.
>
> * * *
>
> [T]he claimant has demonstrated a lack of control due to drug usage and 20 years of substance abuse of Xanax. The claimant's credibility is also lessened because she has been on probation for possession of narcotics, started to drink 10 months ago in November 2005, was treated in the [ER] for a drug overdose in January 2006, and was able to perform complex tasks during testing, as discussed at length above.

AR 21 (citations omitted).

The ALJ gave little weight to the opinions of treating physicians Drs Ho and Cox "because their opinions are conclusory, inconsistent with the medical evidence and are of an advocacy nature

11

not reflecting the true extent of her active alcohol and substance abuse." AR 20. The ALJ further noted that Dr Cox was "a medical resident and not fully-experienced in psychiatric impairments." Id. In rejecting Dr Cox's opinion, the ALJ noted that "[t]he overwhelming evidence of record establishes the claimant has active and continuous alcohol and substance use and * * * when not using these substances, she is able to perform well on such tasks as following directions, learning new simple and moderately complex skills, and goes to class." Id.

The ALJ gave great weight to the ER doctors "because they have examined [plaintiff] and their opinions and diagnoses of drug abuse treatment during her emergency room visits are consistent with the record as a whole." AR 20-21. He also credited consulting psychologist Dr Hallows because "he administered a battery of tests, performed a mental status and clinical examination, is an expert in the field of psychology, and his findings are consistent with the record as a whole as well as [plaintiff's] activities of daily living." AR 21. The ALJ similarly credited the opinions of Drs Liff and Bello and the agency physicians who had reviewed plaintiff's file. Id.

Plaintiff unsuccessfully sought review of the ALJ's decision by the Appeals Council. AR 5. Plaintiff timely commenced the instant action for judicial review of the final decision.

## II

### A

A district court's review of an ALJ's decision is limited to determining whether it is supported by substantial evidence and

**12**

correct legal principles. See generally, <u>Andrews v Shalala</u>, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. Id.

To determine whether a claimant is disabled and entitled to benefits, the SSA conducts a five-step sequential inquiry. 20 CFR § 404.1520. Under the first step, the ALJ considers whether the claimant is currently employed in substantial gainful activity. If not, the second step examines whether the claimant has a "severe impairment" that significantly affects his or her ability to conduct basic work activities. In step three, the ALJ determines whether the claimant has a condition which "meets" or "equals" the conditions outlined in the Listings of Impairments in Appendix 1, Subpart P, Regulations No 4. 20 CFR §404.1520. If the claimant does not have such a condition, step four asks whether the claimant can perform her past relevant work. If not, in step five, the ALJ considers whether the claimant has the ability to perform other work which exists in substantial numbers in the national economy. 20 CFR §§404.1520(b)-(f).

Even if a claimant is found "disabled" under the five-step evaluation process in 20 CFR § 404.1520, the ALJ must find the claimant "not disabled" if the medical evidence indicates that drug addiction and/or alcoholism materially contributed to the finding. <u>Parra v Astrue</u>, 481 F3d 742, 747 (9th Cir 2007). The ALJ must determine which of the claimant's disabling limitations would remain

13

if claimant stopped abusing drugs and alcohol.  20 CFR § 404.1535(b).  If the remaining limitations would not yield a disability finding, then the claimant's substance abuse is material and benefits must be denied.  Id.

### B

Plaintiff contends that the ALJ erred by (1) improperly rejecting Dr Cox's opinion; and (2) improperly discounting plaintiff's credibility.  Doc #12 at 3.

#### 1

Plaintiff argues that the ALJ's reasons for rejecting Dr Cox's medical opinions constituted unsupported and legally improper grounds for rejecting a treating doctor's opinions.  Doc #12 at 6. Specifically, plaintiff contends that Dr Cox's opinions should not have been discounted because she was only a resident and challenges the notion that Dr Cox's opinions were "advocacy."  Id.

The social security regulations distinguish among three types of physicians' opinions:  (1) treating physicians, (2) non-treating examining physicians and (3) those who neither examine nor treat the claimant.  20 CFR § 404.1527(d)(1)-(2).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  Id.  <u>Lester v Chater</u>, 81 F3d 821, 830 (9th Cir 1995).  The ALJ must provide "clear and convincing" reasons for rejecting an uncontradicted treating physician's opinion and "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting a treating physician's opinion if contradicted by another doctor.

14

Lester, 81 F3d at 830.  Where the treating physician's opinion is contradicted and a non-treating source's opinion is based on independent clinical findings differing from the treating physician's, the non-treating source's opinion may constitute substantial evidence to support the ALJ's findings.  Andrews v Shalala, 53 F3d 1035, 1041 (9th Cir 1995).  An ALJ is entitled to give more weight to an opinion that is more consistent with the record as a whole, § 404.1527(d)(4), and to the opinion of a specialist about medical issues related to his or her area of specialty.  § 404.1527(d)(5).  The ALJ is not required to give weight to the opinions of physicians on issues reserved to the SSA, such as statements by a medical source that a claimant is "disabled" or "unable to work."  § 404.1527(e)(1).

        The ALJ gave "little weight" to the opinion of Dr Cox, specifically reasoning that her "opinions are conclusory, inconsistent with the medical evidence, and are of an advocacy nature * * *."  AR 20.  The ALJ went on to explain why he gave greater deference to other opinions of Dr Hallows, who "administered a battery of tests" and is an "expert in the field of psychology," and other findings which were more "consistent with the medical record."  AR 21.  After considering the entire record, this court finds these justifications to be consistent with SSA regulations.  §§ 404.1527(d)(2)-(5).

        Plaintiff also attacks the ALJ's discounting of Dr Cox based on her status as a medical resident, citing Sprague v Bowen, 812 F2d 1226, 1232 (9th Cir 1987), for the contention that Dr Cox's MD credentials mean she is fully qualified to give opinions on medical and mental health issues in disability cases.  Doc #12 at 6.

15

1 Plaintiff adds that Dr Cox is worthy of credence because "she was
2 taking extra credentials and was a resident in psychiatry." Id.

3 If the ALJ meant to say that physician residents are not
4 qualified to give psychiatric assessments, <u>Sprague</u> holds otherwise.
5 Dr Cox's medical opinions (e g that plaintiff's GAF in December 2005
6 was thirty) could not properly be discounted because she was only a
7 resident in psychiatry at the time. Rather, the ALJ should have
8 placed the extent of Dr Cox's experience and the duration of the
9 treating relationship in context when weighing her opinions against
10 those of other medical sources addressing plaintiff's mental health
11 issues. If, however, the ALJ was merely choosing to defer to the
12 opinion of an experienced specialist in psychology over a physician
13 resident, §404.1527(d)(5) allows this. "We must uphold the ALJ's
14 decision where the evidence is susceptible to more than one rational
15 interpretation." <u>Andrews</u>, 53 F3d at 1041. While <u>Sprague</u> holds
16 that, speaking generally, a "licensed physician" may "practice and
17 render psychiatric services," <u>Sprague</u> does not require the ALJ to
18 relinquish his discretion in applying SSA regulations preferring
19 medical opinions that are consistent with the overall record and are
20 made by specialists. <u>Sprague</u>, 812 F2d at 1232. Assuming arguendo
21 that the ALJ ran afoul of <u>Sprague</u>, moreover, the error would not
22 alone warrant remand.

23 On remand, to the extent that mental health records from
24 this period are reconsidered, Dr Cox's medical assessments and
25 progress notes—— but not her letters on behalf of plaintiff—— should
26 be weighed along with the other medical evidence. As for the
27 letters, while plaintiff argues that the ALJ may not dismiss an
28 opinion as "treating source" advocacy simply because the opinion

16

comes from a treating source, citing <u>Reddick v Chater</u>, 157 F3d 715, 725 (9th Cir 1998), plaintiff's treating relationship with Dr Cox began less than three months before the hearing before the ALJ and the bulk of treatment notes post-date the hearing.  The March 13 letter is entitled to no deference by the SSA under §404.1527(e)(1) and the two letters to homeless shelters are at best marginally relevant to the disability determination and were properly disregarded.

2

Regarding the ALJ's determination that she was not credible, plaintiff argues that the ALJ erred in (1) failing to address plaintiff's complaints of agoraphobia and "anti-social symptoms"; (2) making an unsupported factual finding that plaintiff left her last job to care for her daughter, rather than for medical reasons; and (3) failing to acknowledge the third-party report submitted by Andria Tullon to the extent that it was in accord with plaintiff's testimony.  Doc #12 at 7-8.

Once the claimant produces medical evidence of an underlying impairment, the SSA may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.  <u>Lester v Chater</u>, 81 F3d 821, 834 (9th Cir 1996).  Unless there is affirmative evidence showing that the claimant is malingering, the SSA's reasons for rejecting the claimant's testimony must be "clear and convincing."  Id.  The ALJ as fact-finder is solely responsible for weighing and drawing inferences from facts and determining credibility.  <u>Allen v Heckler</u>, 749 F2d 577, 579 (9th Cir 1984).

\\

17

Unlike the excess pain cases to which this analysis typically (and more naturally) applies, this case turns primarily on allegedly disabling mental symptoms that are complicated by undisputed evidence of episodic prescription drug and alcohol abuse. It is far from certain that plaintiff has established "medical evidence of an underlying impairment" pertinent to the alleged agoraphobia, panic attacks and "anti-social symptoms" (Doc #12 at 7) to which plaintiff contends the ALJ should have given more credence. Even so, the ALJ's reasons for finding plaintiff not credible meet the "clear and convincing" standard.

The ALJ specifically noted not only conflicts between plaintiff's assertions and the objective observations of treating and examining physicians, but also self-contradictory statements by plaintiff. Plaintiff alleged disabling depression and anxiety, yet received a GAF score of sixty-eight from Dr Hallows in 2004 and was engaged in exercise, classes and paid work at Hope House at the time of the hearing. AR 19-20. Plaintiff insisted to medical personnel that her Xanax overdose in January 2006 was not a suicide attempt (AR 19), yet wrote in her request for an ALJ hearing that her condition has worsened, stating "I tried to take my own life in January." AR 43. Then, at the ALJ hearing, she testified that "it's not an intention of hurting myself but I don't know what the intention is." AR 403. The ALJ noted that plaintiff was able to attend the hearing "closely and fully without any visible distractions or overt pain behavior and was able to respond to questions in an appropriate manner." AR 21.

Plaintiff contends that the ALJ's "factual finding" that she left her last job to care for her daughter rather than for

18

medical reasons was "unsupported" and not a proper basis for discounting her credibility. Doc #12 at 8. Yet the hearing transcript supports the ALJ's understanding. In a colloquy about plaintiff's reasons for discontinuing work that covers two transcript pages (AR 404-05), plaintiff stated that in 2003 her daughter "decided she wanted to go live in a group home or a boarded care home * * * so I no longer worked anymore." The ALJ then said "Okay. Okay. So, you stopped working to take care of your daughter?" "Right." Plaintiff's testimony constitutes substantial evidence in support of the ALJ's credibility determination.

As to plaintiff's argument that the ALJ incorrectly discounted her credibility without considering the third party daily activities report submitted by Andria Tullon, it was not necessary for the ALJ to consider or discuss Tullen's statements in the context of his credibility determination. That determination is amply supported by the record.

III

For the above reasons, plaintiff's motion for remand is GRANTED. Defendant's cross motion for remand is also GRANTED. This matter is ordered remanded as follows:

On remand, the Office of Disability Adjudication and Review will remand this case to an Administrative Law Judge (ALJ), and direct him or her to address the vocational impact of plaintiff having attained age fifty-five before the ALJ decision. Any evidence from a vocational expert relied on by the ALJ shall contemplate all of plaintiff's assessed limitations. Furthermore, the ALJ shall address all lay witness evidence of record pursuant to

Social Security Ruling 06-03p. On remand, to the extent that mental health records from this period are reconsidered, Dr Cox's medical assessments and progress notes should be weighed along with the other medical evidence, but opinions properly excluded under 20 CFR § 404.1527(e) should not be considered.

It is not necessary for the ALJ to revisit his determination regarding plaintiff's credibility as this aspect of the decision is supported by substantial evidence.

If upon remand the five-step analysis results in a determination that plaintiff is "disabled," the SSA must conduct a DAA Analysis under 20 CFR § 404.1535(b) before deciding whether plaintiff is eligible for benefits.

The clerk shall enter judgment in favor of plaintiff and against defendant and shall close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge